MARC WICHINSKY, Appellant, *v.*
RALPH MOSA, Respondent.

No. 22751

February 23, 1993                    847 P.2d 727

---

[Rehearing denied April 21, 1993]

*Robert A. Massi* and *J. Scott MacDonald,* Las Vegas, for Appellant.

*Brown & Brown,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

Appellant Marc Wichinsky ("Wichinsky") and respondent Ralph Mosa ("Mosa") entered into a gaming slot route partnership called Caco. The business placed, serviced, and maintained slot and poker machines in businesses throughout Southern Nevada. After several successful years, Mosa desired to retire and both partners agreed to sell the business. Because of their inability to amicably dissolve the partnership, the parties agreed to submit the dissolution to arbitration.

Prior to arbitration, Southwest Gaming Services, Inc. ("Southwest") expressed an interest in purchasing Caco. Southwest initially submitted a letter of intent to purchase Caco for $1.5 million and made a later offer of $750,000. Both offers were made solely for the purpose of negotiation. Ultimately, Southwest submitted a final, conditional offer of $400,000, which was withdrawn prior to acceptance. Southwest decided to establish its own slot route rather than purchase an existing one.

In advance of the first scheduled arbitration hearing in July, 1991, Mosa filed a complaint in the district court alleging breach of fiduciary duty and wrongful interference with prospective economic advantage. Mosa alleged that Wichinsky hindered the sale of Caco by demanding that potential buyers enter into an employment agreement with him as a condition to selling his share of the partnership.

Rather than litigating the tort claims in district court, however, the parties submitted the claims to arbitration. The arbitrator awarded Wichinsky $91,000 to balance partnership draws, and split Caco's liabilities, assets, and slot routes fairly evenly between the two partners. On the tort claims, the arbitrator found that Wichinsky's employment request to Southwest interfered with Mosa's prospective economic advantage. The arbitrator also found that Wichinsky's removal of Caco's records from the business premises constituted a breach of fiduciary duty to the partnership and violated Nevada Gaming Control Board Regulation 6.050.[1] Consequently, the arbitration award favored Mosa

---

[1]Regulation 6.050(2) states:

Each partnership licensee shall keep on the premises of its gaming

with $201,000 in compensatory damages and $205,000 in punitive damages.

Post arbitration, Mosa filed a motion with the district court to confirm the arbitration award and secure entry of judgment. Wichinsky opposed the motion and filed a countermotion to vacate the arbitrator's award. The district court affirmed the arbitrator's findings in their entirety, thus prompting Wichinsky to appeal.

Wichinsky urges vacatur of the arbitration award on the grounds that (1) the award was unsupported by the evidence and was therefore arbitrary and capricious; (2) the arbitrator was biased in favor of Mosa; and (3) the arbitrator misinterpreted the law.

## Discussion

Preliminarily, we note that the appellate record is scant as the arbitration proceedings were not reported. The evidence adduced during arbitration is best reflected by the arbitrator's award and the affidavit of Nikolas L. Mastrangelo, counsel for Wichinsky. Generally, statements made by counsel portraying what purportedly occurred will not be considered on appeal. Lindauer v. Allen, 85 Nev. 430, 433, 456 P.2d 851, 852-53 (1969). However, because the record is limited and opposing counsel has failed to submit a counteraffidavit, we are constrained to rely on counsel's affidavit to some extent. *Cf.* Bates v. Chronister, 100 Nev. 675, 679, 691 P.2d 865, 868-69 (1984) (where appellant established *prima facie* showing of error on a partial record, respondent had burden of designating those portions of the record which support the lower court's findings) (citing Driscoll v. Erreguible, 87 Nev. 97, 101-03, 482 P.2d 291, 294-95 (1971)).

## Intentional Interference with Prospective Economic Advantage

Wichinsky first challenges the arbitrator's finding that Wichinsky interfered with Mosa's prospective economic advantage. Liability for the tort of intentional interference with prospective economic advantage requires proof of the following

establishment, or provide to the audit division upon its request, the following documents pertaining to the partnership:

(a) A certified copy of the partnership agreement and, if applicable, the certificate of limited partnership;

(b) A list of the partners, including their names, addresses, the percentage of interest held by each, the amount and date of each capital contribution of each partner, the date the interest was acquired, and the salary paid by the partnership; and

(c) A record of all withdrawals of partnership funds or assets.

elements: (1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. Leavitt v. Leisure Sports, Inc., 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987).

Mosa's claim for interference of prospective economic advantage is based on Wichinsky's alleged demand that he be hired by Southwest as a condition of the sale of Caco. The only evidence Mosa presented to demonstrate that Wichinsky hindered the sale of Caco was the testimony of Mosa's real estate agent, Rod Des Vaux. Des Vaux testified that Wichinsky contacted Southwest and requested employment some time after Southwest had made a contingent offer of $750,000. Thereafter, Southwest reduced its offer to $400,000.

However, the evidence does not support the inference that Southwest's reduced offer was due to Wichinsky's employment request. Des Vaux admitted that the reduced offer may have been attributable to Southwest's review of Caco's records. Moreover, in a sworn statement, Brad Pederson, the president of Southwest, stated that Southwest retracted its offer to purchase Caco because it decided to establish a slot route operation from the ground up rather than buy an existing operation. Pederson also stated that Wichinsky said or did nothing to hinder the sale of Caco.

Moreover, there was no evidentiary basis for the $200,000 compensatory damage award. The arbitrator apparently relied on Southwest's last offer of $400,000 in determining the amount of compensatory damages to which Mosa was entitled. However, the record reflects that the offer was conditional and later withdrawn for reasons unrelated to any conduct by Wichinsky. Finally, the record is devoid of evidence of any other offers for Caco which would support the arbitrator's award.

Absent proof of each element of the tort of intentional interference with prospective economic advantage, the claim must fail. As previously observed, the record does not reflect either an intent on the part of Wichinsky to interfere with a prospective sale to Southwest or actual harm resulting to Caco from Wichinsky's conduct. Consequently, the arbitrator's finding that Wichinsky intentionally interfered with Mosa's economic advantage was erroneous, and the award of $200,000 in compensatory damages to Mosa must be vacated.

*Breach of Fiduciary Duty*

The arbitrator concluded that Wichinsky breached his fiduciary

duty as a partner by removing partnership books from Caco's offices in violation of Nevada Gaming Control Board Regulation 6.050.

Regulation 6.050 requires that a partnership licensee keep certain records on its premises *or* provide such records to the Gaming Board audit division upon request. The evidence does not support the finding that Wichinsky's removal of the partnership books was motivated by fraud, malice or concealment. On the contrary, the record reflects that Wichinsky removed the partnership books for the purpose of having them evaluated by an accountant. Moreover, there was no evidence establishing that Wichinsky failed to comply with any Gaming Board requests.

Because the record does not support the arbitrator's finding that Wichinsky breached his fiduciary duty to the partnership, the arbitrator's $1,000 compensatory damages award for such a breach must also be vacated.

### Punitive Damages

Punitive damages are authorized by statute. NRS 42.005 provides for an award of punitive damages upon a showing of fraud, oppression or malice by clear and convincing evidence. Tort liability alone is insufficient to support an award of punitive damages. *See* First Interstate Bank of Nevada v. Jafbros Auto Body, Inc., 106 Nev. 54, 57, 787 P.2d 765, 767 (1990).

Our review of the record discloses no evidence which would support a finding of fraud, oppression or malice attributable to Wichinsky. Therefore, the $205,000 punitive damages award must also be vacated.

An arbitrator enjoys broad discretion in determining issues under an arbitration agreement. However, that discretion is not without limits. If an award is determined to be arbitrary, capricious, or unsupported by the agreement, it may not be enforced. Exber, Inc. v. Sletten Construction Company, 92 Nev. 721, 731, 558 P.2d 517, 523 (1976). We have stated that ''[t]he district court's power of review of an arbitration award is limited to the statutory grounds provided in the Uniform Arbitration Act.'' New Shy Clown Casino, Inc. v. Baldwin, 103 Nev. 269, 271, 737 P.2d 524, 525 (1987); *see* NRS 38.145(1).[2] However, when an arbitra-

---

[2]NRS 38.145(1) provides the following grounds for vacating an arbitration award:

    (a) The award was procured by corruption, fraud or other undue means;

    (b) There was evident partiality by an arbitrator appointed as a

tor manifestly disregards the law, a reviewing court may vacate an arbitration award. *See* French v. Merrill Lynch, Pierce, Fenner & Smith, 784 F.2d 902, 906 (9th Cir. 1986) ("[a]n arbitrator's decision must be upheld unless it is 'completely irrational,' or it constitutes a 'manifest disregard of the law'" [citations omitted]).

The lack of evidence to support the arbitrator's findings compels us to conclude that the arbitrator abused her discretion in awarding Mosa compensatory and punitive damages. We also conclude that the arbitrator demonstrated a manifest disregard of the law by awarding punitive damages in the absence of clear and convincing evidence of fraud, oppression or malice. Therefore, the arbitration award should not have been confirmed.

Although the arbitrator's award of compensatory and punitive damages to Mosa must be reversed and vacated, and the $91,000 award to Wichinsky affirmed, we are unable to discern from the record the extent to which the arbitrator's division of Caco's liabilities, assets, and slot routes may have been affected by the compensatory and punitive awards. Accordingly, the matter will have to be remanded and arbitrated anew with respect to an equitable division of Caco's liabilities, assets, and slot routes.

### Conclusion

For the reasons stated above, we reverse and vacate the district court's order confirming the arbitration award insofar as it awarded compensatory and punitive damages to Mosa, confirm the award of $91,000 to Wichinsky, and remand to the district court for assignment to a new arbitrator to determine once again the division of Caco's liabilities, assets, and slot routes between the parties.[3]

---

neutral or corruption in any of the arbitrators or misconduct substantially prejudicing the rights of any party;

(c) The arbitrators exceeded their powers;

(d) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of NRS 38.075, as to prejudice substantially the rights of a party; or

(e) There was no arbitration agreement and the issue was not adversely determined in proceedings under NRS 38.045 and the party did not participate in the arbitration hearing without raising the objection.

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.